IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 10-cv-00091-WYD

WILDEARTH GUARDIANS,

    Plaintiff,

v.

KEN SALAZAR, in his official capacity as United States Secretary of the Interior.

    Defendant.

# ORDER

## I.    INTRODUCTION

THIS MATTER is before the Court on Plaintiff's Petition for Review of Agency Action filed on January 15, 2010. Plaintiff WildEarth Guardians ("WildEarth") alleges that Defendant, Ken Salazar, United States Secretary of the Interior, ("Secretary") violated his statutory duty under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. The Secretary delegated his responsibilities pursuant to the ESA to the agency United States Fish and Wildlife Service ("Service"). WildEarth argues that the Service violated the ESA within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, when the Service issued a negative 90-day finding that listing of the Scott's Riffle Beetle, *Optioservus phaeus*, ("Beetle") as a threatened or endangered species was not warranted.

The matter was originally assigned to District Judge John L. Kane, who presided over the preliminary matters. On September 3, 2010, WildEarth filed its opening brief.

On October 15, 2010, the Secretary filed a response brief.  Subsequently, on November 12, 2010, WildEarth filed a reply brief.  Once the matter was fully briefed, it was reassigned to me on November 15, 2010.  For the reasons stated below, I find that Plaintiff's petition to review agency action must be denied.[1]

II.  BACKGROUND

On July 24, 2007, WildEarth filed a petition to protect 206 species, including the Beetle.  On June 12, 2008, WildEarth filed an emergency petition to list 32 species, including the Beetle, that were previously listed in the initial petition.  On July 25, 2008, the Secretary, through the Service, denied WildEarth's emergency listing petition for the Beetle.  On February 5, 2009, the Secretary denied WildEarth's original petition to list the Beetle as threatened or endangered.

WildEarth alleges that the Beetle population is threatened by aquifer dewatering, contamination, and habitat destruction given its restriction to one site.  The total Beetle population is estimated at between 2,000 and 4,000 beetles, depending on seasonal fluctuations. They describe the Beetle as rare and vulnerable because it is known to exist only in one site, a 50 foot stretch of stream that is less than one acre and is fed by a single spring in Lake Scott State Park, Kansas.

The spring that feeds the Beetle's habitat is fed by the Ogallala aquifer, which underlies eight Great Plain states.  WildEarth states that the aquifer is being depleted

---

[1] I note that WildEarth requests oral argument on its petition.  Granting oral argument is within my discretion under D.C.COLO.LCivR 7.1.G.  Having reviewed the parties' briefs, I find that oral argument is unnecessary as it would not materially assist me in deciding the issues raised in the petition.

and consequently groundwater levels are falling.  Thus, they assert that the dewatering of the aquifer threatens the Beetle population because reduced spring flows directly relates to reduced number of larvae seen on the rocks in the spring season.  The spring had a reported yield of 400 gallons per minute in 1974, but the reported yield decreased to 350 gallons per minute by 1998.  Additionally, WildEarth states that a single incidence of chemical contamination or reduced spring flow could cause the Beetle's extinction.

WildEarth asserts that the negative 90-day finding issued by the Service with regard to the Beetle is arbitrary and capricious, as well as contrary to the direct meaning of the ESA.  Furthermore, the Service allegedly disregarded substantial scientific and commercial information presented by the petition, the emergency petition, and contained elsewhere in the Administrative Record that should have convinced a reasonable person that listing of the Beetle might be warranted and that further investigation is necessary.  50 C.F.R. § 424.14(b). The Kansas Department of Wildlife and Parks, a state agency vested with environmental protection duties similar to those vested in the Service, found that aquifer groundwater depletion was a threat to the Beetle and therefore, sufficient to justify a recovery plan.  WildEarth argues that the Secretary should have given this information significant weight.  WildEarth requests that the Court reverse the Secretary's negative 90-day finding and order the Service to issue a new 90-day finding that applies the appropriate legal standard to WildEarth's petition within 90 days of the Order.

The Secretary responds that the Service's negative 90-day finding for the Beetle

should be upheld because the finding complies with the ESA and the APA and was not arbitrary, capricious, or an abuse of discretion or contrary to law. The Service relied on a summary of the Beetle provided by Nature serve and incorporated in WildEarth's petition. NatureServe is a nonprofit organization that provides a database of information and analysis about the status and distribution of species, ecosystems, and conservation issues. The Service assessed the NatureServe summary and determined that the Beetle was afforded protection due to its location in a state park and that the Beetle population was considered to be stable. Nature serve also assigns species a conservation status rank and ranked the Beetle's global status as G1, a critically imperiled species, because the Beetle is endemic to one site consisting of < 1 acre. The Secretary, however, notes that Nature serve's conservation status rank to a species "does not constitute a recommendation by Nature serve for listing under the U.S. Endangered Species Act." (ECF No. 20 at 5.)

The Secretary also considered the Kansas State recovery plan for the Beetle and the Kansas Comprehensive Wildlife Conservation Plan to protect and preserve the species' habitats. Ultimately, the Secretary determined that the recovery plan did not provide analysis on whether any threats were currently affecting the Beetle population or reasonably likely to affect the Beetle in the foreseeable future. The Secretary requests that I deny WildEarth's petition for review of agency action. If I grant WildEarth's motion in its entirety or in part, the Secretary argues that the only appropriate remedy would be to "hold unlawful and set aside" agency action and remand to the Service for further action consistent with the correct legal standards.

5 U.S.C. § 706(2).

III.  ANALYSIS

  A.  Standard of Review

The APA provides judicial review of final agency action pursuant to 5 U.S.C. § 551 et seq. The Tenth Circuit has held that "in examining whether the Service's actions violate the ESA, we rely on the standards of review provided in the APA," because the ESA itself does not contain an internal standard of review. *Biodiversity Legal Found. v. Babbitt*, 146 F.3d, 1249, 1252 (10th Cir. 1998). Section 706 of the APA provides that the reviewing court should "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. In making its determinations, "the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.*

"Under the APA, administrative decisions involving the ESA are upheld unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Biodiversity*, 1146 F.3d at 1252 (citing 5 U.S.C. § 706(2)(A)). "The APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency." *Utahns for Better Transp. v. United States Dept. of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002). "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection

between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 42 (1983)).

"In reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id.* "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle*, 463 U.S. at 43; *see also Colorado Envtl. Coalition v. Dombeck*, 185 F.3d 1162, 1167 (10th Cir. 1999).

Furthermore, the "reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The court, however, will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (citing *Bowman Transportation, Inc. v. Arkansas-Best Freight System*, Inc., 419 U.S. 281, 286 (1974)). The court's inquiry is to be thorough, but an agency's decision is "entitled to a presumption of regularity." *Utah Envtl. Congress v. Bosworth*, 443 F.3d 737, 740 (10th Cir. 2006). Deference to the agency's decision is "especially strong where the challenged decisions involve technical or scientific matters within the agency's area of expertise." *Id.* (citing *Marsh v. Or.*

*Natural Res. Council*, 490 U.S. 360, 378 (1989)).

The court also grants "substantial deference" to the agency's interpretations of its own regulation when reviewing conflicting interpretations of an agency's statutes and regulations. *Id.* The Tenth Circuit has held that courts may reject the agency's interpretation only when it is "unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." *Id.* (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 738 (10th Cir. 1993)). Thus, the petitioner challenging the Service's action bears the burden of establishing that the action is arbitrary or capricious. *Forest Guardians v. United States Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2007). The Service's factual determinations are governed by the substantial-evidence standard, which provides that the agency's decision should be set aside only if it is unsupported by substantial evidence. *Id.* "Evidence is substantial in the APA sense if it is enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact." *Id.* (quoting *Olenhouse*, 42 F.3d at 1575). The substantial-evidence standard disallows the court from displacing the agency's choice between "two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (citations omitted).

I am, therefore, required to determine whether WildEarth carried its burden in establishing that the Service's decision was arbitrary and capricious. WildEarth must prove that the agency did not examine relevant data and failed to articulate a rational connection between the facts found and the decision to issue a negative 90-day finding that the Beetle should not be listed as endangered. WildEarth carries a high burden. I

grant substantial deference to the agency's decision because the challenged decision to list the Beetle as endangered involves technical or scientific matters within the Service's area of expertise.

### B. Whether the Service's Decision was Arbitrary and Capricious

WildEarth argues that the Service's decision to grant a negative 90-day finding was arbitrary and capricious because the Secretary violated his statutory duty under the ESA by rejecting WildEarth's petition to list the Beetle as an endangered species.

#### 1. The Endangered Species Act ("ESA")

The ESA, 16 U.S.C. §§ 1531 et seq., was enacted in 1973 "to provide a means whereby the ecosystem upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). An "endangered" species is defined as one that is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6); *see also* 16 U.S.C. § 1533(a)(1). The ESA defines a "threatened" species as one that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

Section 4(a)(1) of the ESA mandates that the Secretary, through the Service, evaluate "whether any species is an endangered species or a threatened species because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the

inadequacy of existing regulatory mechanisms; *or* (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1) (emphasis added). The presence of one of these five factors is sufficient to support a listing determination that the species is endangered or threatened. The Service is required to make listing determinations "solely on the basis of the best scientific and commercial data available to [it] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species." 16 U.S.C. § 1533(b)(1)(A).

The Secretary or an interested person can initiate the listing process by filing a petition to list a species with the Service. 16 U.S.C. § 1533(b)(3)(A). Upon receipt of the petition, the Secretary is required to determine within 90 days "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.; see also* 50 C.F.R. § 424.14(b). A positive 90-day finding is followed by a status review within twelve months to determine whether the species will be listed. 16 U.S.C. § 1533(b)(3)(B). A negative 90-day finding ends the listing process, and the ESA provides that the negative finding "shall be subject to judicial review." 16 U.S.C. § 1533(b)(3)(C)(ii). Here, WildEarth is challenging the Service's negative 90-day finding.

### 2. The "Substantial Information" Standard

Regulations guiding the Service's treatment of listing petitions under the ESA define "substantial information" as "that amount of information that would lead a

reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1). The applicable regulations also specify four factors that the Secretary shall consider when evaluating whether to grant a petition to list a species. 50 C.F.R. § 424.14(b)(2). The Secretary is required to consider whether the petition "(I) Clearly indicates the administrative measure recommended and gives the scientific and any common name of the species involved; (ii) Contains any detailed narrative justification for the recommended measure, describing, based on available information, past and present numbers and distribution of the species involved and any threats faced by the species; (iii) Provides information regarding the status of the species over all or a significant portion of its range; and (iv) Is accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps." *Id.*

        3.        <u>Whether "Substantial Evidence" Supports the Service's Decision</u>

The Service states that its decision to issue a negative 90-day finding was based on WildEarth's failure to provide substantial information regarding the five factors needed to support a listing determination. On the other hand, WildEarth alleges that the Service failed to articulate a rational connection between the facts found and the decision issued. I will address whether there is substantial evidence to support the Service's determination that none of the five factors applied to the Beetle. I also analyze whether the Service considered all relevant factors and whether there was a clear error of judgment.

First, WildEarth asserts that the Beetle is subject to "the present or threatened destruction, modification, or curtailment of its habitat or range." 16 U.S.C. §

1533(a)(1)(A). The Service found that according to Nature serve, the Beetle species is thought to be stable. Furthermore, based on its review of Nature serve's summary, the Kansas Comprehensive Wildlife Conservation Plan, and the Kansas state recovery plan, the Service could find no information that any of the potential threats (such as reduced spring flows due to dewatering of the Ogallala Aquifer), were currently affecting the Beetle population or reasonably likely to affect the Beetle population in the foreseeable future. In fact, despite this "threat" of a reduced water flow, the recovery plan noted that the Beetle population has been healthy, stable, and thriving for several decades. Thus, even though there were one or more potential threats cited in connection with the Beetle, the Service found that there was not substantial documentation to indicate that these threats were currently affecting the Beetle or reasonably likely to affect the Beetle in the future. Based on my factual review of the record, I find the Service's determination on this point to be reasonable.

With respect to the second factor (overutilization for commercial, recreational, scientific, or educational purposes) and the third factor (disease or predation) necessary to support an endangered species list determination, the Service found that the Petition "did not contain any Beetle information on these factors and therefore, did not present substantial information." (ECF No. 20 at 9) (internal quotation marks omitted).

As to the fourth factor (the inadequacy of existing regulatory mechanisms), the Service found that WildEarth's assertion that more protection would be afforded to the Beetle if it was listed under the ESA does not provide substantial information that the existing regulatory mechanisms are inadequate.

Finally, in connection with the fifth factor, (other natural or manmade factors

affecting its continued existence), the Service found that Plaintiff's assertion that the Beetle is threatened with extinction due to rarity, is not substantial information without more. The Service noted in its finding:

> While we recognize that many of the species contained within the Nature serve database have limited distribution or small population size, limited distribution and population size were not identified as threats faced by any of the 165 species in the petition, including all available references and the Nature serve species files and these two factors alone without elaboration may not be substantial information that may warrant listing under the Act.

(Admin. Rec. 000418.)

Accordingly, I find that WildEarth failed to carry its burden in establishing that the Service's decision was arbitrary and capricious. I find that the Service examined all relevant data and articulated a rational connection between the facts found and the decision issued pursuant to the applicable "substantial information" standard. Furthermore, the Service considered all relevant factors and there was no clear error of judgment since "substantial evidence" supports the Service's decision.

IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiff's Petition to Review Agency Action is **DENIED**, and this matter is **DISMISSED**.

Dated: September 14, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge